The argument this morning is 18-1022, Secretary of the Army v. Kellogg Brown & Root, Mr. Grimaldi. Thank you and good morning, Your Honors. I may please the Court. The dispute between the United States and KBR regarding KBR's billing of private security contractor costs returns to this Court following this Court's 2015 decision. In that decision, this Court found that the proper interpretation of the contract, the Log Cap 3 contract, was that private security contractor, or PSC, costs were not allowable. This Court, therefore, addressed KBR's initial theory of this case. Okay, can I just, we all know the background. Of course. Just a logistical question. Yes. If we affirm that the Board had jurisdiction, hypothetically, if we affirm that they had jurisdiction over COMP 2. Correct. And then we agree with the interest, does that end the case? Is that everything, or is there? We have not appealed the summary judgment finding, yes. Okay. So that would end the case, Your Honor. Thank you. So, Your Honor, I'll skip to the interest. I'm sorry? Could I start you with the interest question? Yes, of course. Because I think it's a little challenging. Is your view that the clock should start running 2011? Correct. That is correct, Your Honor. And the reason for that is that that is the first claim that has alleged a breach of contract. The 2007 claim, the 2009, the 2010 claims were all the disallowance claims. But those were, well, can an untimely claim support the award of interest under the statute? Well, Your Honor, to be clear, our interest is an alternative argument. So it presumes that this Court would find against us on COMP 2 and find that there was actually no need to check the timeliness of COMP 2. Okay. But let's assume we're at the interest stage. So the options are 2007 and relying on those claims. And then your view is the 2011, which, again, wanted some clarity as to why, how we could start the clock running at 2011. Right. You haven't argued that there should be no interest, right? You haven't said, well, in the absence of any, you know, you're not going to COMP the 2007. 2011, it's odd to COMP that date because it was untimely. So you haven't said, and therefore, there should be no interest at all award in this case. We have not argued that in our briefing, I believe. That is correct, Your Honor. Our argument was focused on – And can I ask you – Yeah, sure. I mean, I'm not pushing that argument, but why not? I mean, is it just because I don't know enough about this area of – I mean, this is your specialty. Is that because there's always got to be some interest, that the equities just suggest, of course, there's interest in this case? Well, I guess our argument didn't presume the possibility of this court finding that the 2011 claim was untimely, but that there was no need to assert it in order to properly bring it as an affirmative defense. But it is a requirement to – you know, theoretically, going down this path, Your Honor, there is necessarily a requirement to file a certified claim to get interest. You cannot get interest in defense of a government claim without a certified claim. If said claim that you file is untimely, I guess the problem here would be, Your Honor, is with that untimely claim is that the purpose, one of the purposes of the CDA interest provision is to get the parties to the table to discuss, to give the contracting officer an opportunity to resolve the issue prior, at a prior point. In this case, I mean, there was a claim that was presented to the contracting officer. It was determined that that claim was not a valid claim, but it nonetheless was a claim. So wouldn't that serve the purposes of getting the parties to the table? In 2011. But even in the earlier claim. I know there was an earlier claim that was made. Correct. This court ultimately said that, you know, that was not a proper – under the contract, did not award that, said that that claim was not a properly awardable claim. But nonetheless, there was a claim that was made. So one could argue that there was notice provided to the government. The government surely knew that there was a claim for damages here. Correct. In the 2007, 2009, and 2010, three claims, Your Honor, in fact. All three, though, alleged that there was unlawful disallowment, that the PSC costs were permissible underneath the contract, a different claim. In fact, two of those claims, the 2007 one and the 2010 one, actually argued that there was no force protection obligation for subcontractors on the part of the Army, which is the opposite of the 2011 claim. What do you think the purpose is behind this statute? What is the purpose? Why is it – I mean, I've looked at other statutes that talk about interest, and they say, for example, from the time that the complaint is filed. Right. So isn't this kind of serving the same purpose? Even if that complaint is later amended, you're still looking at from the time that the suit is initiated. Right. But if you look at the language that talks about same operative facts, if we're talking about whether a claim comes from another claim, one of the key distinctions of whether a claim has different operative facts, and it's a very different claim, is whether or not there is a required to prove conflicting facts. So for the 2007 and 2010 claims by KBR, KBR alleged specifically that, and this is pages 345 to 46 and 395 to 97, specifically that there was no contractual obligation on the part of the Army to provide force protection for subcontractors under Log Cap 3. Cut to their alternative argument, the argument that we're talking about today, the argument there is summary judgment and there is an award of interest. The argument there by KBR is the exact opposite, that there is a force protection obligation on the part of the Army to provide protection for subcontractors, and that obligation was violated. It is the complete opposite claim, opposite factual scenario that must be proven. It does not give the contracting officer notice of what KBR is actually going to be arguing for the breach of contract theory. So you would say that under this statute, the interest statute, section 7109, when we say interest in the amount found due a contractor on a claim, it must be the actual claim that ultimately they succeed on. Yes, Your Honor, that's correct. But on your, just following up on Judge Silk, because I have similar questions, is where she started was kind of the policy reason. Right. So not that we do policy here, but to the extent that we want to consider that, no matter what names you put to it or legal theories, starting in 2007, we were all talking about the same thing. They were arguing facts, they were presenting different legal theories, but we were talking about the same pot of money and the same facts that resulted in the costs here. So in terms of being able to settle and when parties have known there was some sort of dispute about this, that was the case in 2007. The legal theories may not have been perfected by that time, but we're still talking about the same thing here than we were then. So why isn't that enough to have satisfied whatever policy concerns served as the impetus for Congress to award interest? Well, because there is an impediment to settlement if the argument presented by KBR is solely a contract interpretation issue, which the United States believed was flat out wrong, and which this Court ultimately agreed with in 2015. The argument presented by KBR in 2007, 2009, and 2010 was solely that the cloud cap contract itself permitted the use of PSCs and that by not paying for PSCs or withholding them afterwards to recoup them, the United States violated the contract, the clear terms of the contract. The United States knew this argument to be incorrect and was ultimately vindicated on that. So that didn't serve as a proper, I think, inducement, let's say, to settlement, Your Honor, because it is a completely different argument and, in fact, opposite argument that KBR ultimately received summary judgment on and an interest award. What is your basis for saying that the purpose for this statute, the way it's written, is to support getting the parties together to try to resolve the issues? I mean, is there any legislative history or anything else that you could identify for us? The fidelity matter that we cite in our briefs, Your Honor, discusses the purpose of the interest award. And it is, you know, to be fair, Your Honors, it's twofold. The first, one of the key reasons to have a CDA interest is to make a contractor whole and to be very clear about that. That is a key purpose of it. But the other purpose is to get the parties to the table. And I apologize, Your Honors. I'm just turning to our briefing right now to pull up. And we discussed this on pages 32 to 34 of our briefing. Your Honor, the basis and the purpose of it and legislative history that was looked at showed that the point of it was to get the parties to the table to discuss. Which page are you looking at? I'm looking at 34, Your Honor. Maybe I have it in my reply brief, Your Honor, because it does not appear here. Oh, yes. Fidelity appears in our reply brief. I apologize, Your Honor. 22 and 23? 22, 23. And we can see in footnote 5 on page 23, that's where we discuss the first purpose that I mentioned to you, and that's making the contractor whole. But the CDA provision provides an incentive or inducement, according to the Fidelity matter, which did look at the legislative history for the CDA interest. So I'm sure you wanted to start by talking about jurisdiction. I would, yes. I always like to start with my primary argument. Your Honors, just briefly about, just in general, whether or not Count 2 was correctly before the ASBCA. We do note that the Board did recognize this court's precedent in M. Maripakas and his progeny, that the affirmative defense to a government claim is a claim itself requiring a timely certified claim. But you recognize, and I guess we all have to, we've got at least four cases that are in play here that speak to this issue, and yet we do abide by a principle that the first precedent, if there's a conflict, applies. But we've done a fair, I think, tried at least, in Laguna and then certainly in Securiforce, which is the most recent case, to sort of reconcile those precedents. So what we said in Laguna and what we said in Securiforce is not helpful to you in your case, right? No. You're relying on the earlier cases, which... I would disagree with that, Your Honor. I think that they are helpful. I think that the situation we have here is a request by KBR for an adjustment to the contract and a request for $44 million on top of what is allowed by the contract. Now, the limitation on the M. Maripakas rule that an affirmative defense requires a certified claim by the contractor is a request for money or a request for adjustment to the terms of the contract. Now, in Laguna, this court found that when the government was asserting fraud as a defense, that was not seeking an adjustment to the terms of the contract or additional money. In Securiforce, when this court found that the challenge determination for cause saw only an excuse for failure to perform. What KBR is doing here is asking for this court to find that unallowable costs, PSC costs, are actually allowable in response to the government's breach of the Voice Protection Act. So that is $44 million on top of what is owed under the KBR contract. To think about it is if a breach of contract claim had actually been filed in 2003 when these events occurred. I understand your argument, but I guess it's also, and I think the similar observation was made by our court in Laguna, that in some sense, any defense in some sense seems to be a claim for money in the sense that it has an effect of reducing one's liability. Absolutely. So it's a little hard to sort of, you know, it's a little hard to think of ease. Well, this case is unique, and the reason why this case is unique is because KBR's affirmative defense is a mirror image to what its affirmative CDA claim could have been in 2003. Instead of pursuing a breach of contract claim in 2003, KBR billed the United States through firm fixed price subcontractor costs for this PSC costs. The costs were hidden in the mix. The United States paid the $44 million on top without knowing, Your Honor, there's been no fact-finding. The United States knew it was paying PSC costs in 2003. Paid the money, and then years later, in response to questioning from Congress, received notice from a subcontractor that the United States had been paying PSC costs. So then it withheld to retake the money back. Basically, what the ruling by the ASBCA condones is a contractor hiding costs that are unallowed by a contract in billing, having the United States pay them. The United States later withholds them, and then the KBR is absolved of filing a timely certified claim to allege breach of contract and seek these costs at a later date. What should have happened, Your Honor? There's a whole lot of nefarious motivation underlying the statements you made. Well, whether or not it was intentional or not, I mean, we certainly— You say they were hiding. That word kind of suggests— Well, it was hidden in the sense that the subcontractor billings were firm fixed price, so they weren't broken out. So there was no line item— You're not suggesting there was anything fraudulent or anything nefarious— No, there was a litigation decision, as far as I can tell, to pursue only a breach— excuse me, a contract interpretation issue, and basically a piecemeal approach was taken, raising breach of contract in 2011. Your Honors, I believe I'm over. Thank you. We'll restore some of that. Good morning, Your Honors. May it please the Court. My name is Jason Workmaster. I'm with the law firm of Covington & Burling. With me at council table is Alec Cerullo and Ted Fenster, also of my firm. Why don't you start with the interest, since that's where we started the last time. Certainly, Your Honor. So on the interest point, Your Honor, I think that really starts with what Mr. Grimaldi was just saying, that KBR somehow should have been filing claims as long ago as 2003. The facts here are, Your Honor, that as the Board found, the government knew about the use of private security, knew it was paying for private security, no later than June of 2005, the government appealed that decision to the Board, the last time this case was before this Court, and this Court affirmed that finding to the Board. No, we know that, but can we look at the language of the statute? Certainly. So, then this is where Judge Stoll started as well. Which is the, the relevant provision refers explicitly to the contractor's claim. Yes, Your Honor. Claim, due a contractor on a claim, next it says the contractor's claim, and it concludes by saying until the date of payment of the claim. Yes, Your Honor. So, we're repeatedly, clearly telling them, where is that, why does that lead us to go back to 2007? All right, Your Honor. So, when the government, as the Board found, when the government asserted its claim in February of 2007, at that time, the contracting officer issued a letter. We cite it in our papers. It is, we cite it in our briefs on page 12. She issued a letter to KBR asserting the government's claim, and she said in that letter, as noted within the basic contract, Clause 816, and as noted in several task orders, security was to be provided by the government to those employees performing duties under the Log Cap 3 contract. As such, costs associated with privately acquired security should not be charged or paid under the contract. That was the government's claim. The government then executed on that claim and took approximately $20 million from KBR at that time. In response to that recoupment of cost, KBR then submitted its 2007 claim demanding return of that exact same amount. That was a proper claim. It asserted the legal theory that Mr. Grimaldi was mentioning, but, Your Honor, that was not the only thing that was in that 2007 claim. As we pointed out in our papers, in our brief, at pages 30 and 31, in addition to that contract interpretation theory, as a factual matter, those 07, and then when the government took more money, in 09, another claim was submitted demanding return of that exact amount, and then in 2010, the government took more money, another claim was submitted demanding return of that exact same amount. In each one of those 07, 09, and 10 claims, KBR expressly said, KBR representatives had discussions with Brigadier General Scout Best about the fact that the Army lacked the necessary resources to provide military escorts for transport vehicles provided by KBR and its subcontractors. The Army was fully aware that the total number of KBR and subcontractor convoys leaving Kuwait for Iraq was greater than the number of convoys for which the military provided armed escorts, and KBR also alleged the Army PCO, the procuring contracting officer in Rock Island, had constructive knowledge that KBR's log cap three subcontractors were using armed private force protection. Each one of those three claims, Your Honor, even if it wasn't, even if this court finds that those claims needed to be submitted, each one of those claims put those facts at issue, and then when you get to 07... Can I interrupt you for a minute? Yes, yes. Okay, so I think your point is that the operative facts in the 2007, 2009, 2010 claims, those are the same as the operative facts in the 2011 claim, and therefore you should be able to go back to 2007. Yes, Your Honor. What is the language in the statute that you think allows you to do that? So in the statute, the statute provides for the payment of interest for the submission of a contractor claim. There is a long line of board precedents, Your Honor, that we cited in our papers, the Martin Marietta decision among others, that stands for the proposition when the government executes, as it chose to do here, the government did not have to execute on its claim. The government could have issued a final decision to KBR demanding return of the money, and KBR could have remained the stakeholder. That could have happened. That is not what the government did. The government executed on its claim, took the money back, and there's a long line of precedent with the Martin Marietta decision among others that say that in that instance, when the government takes money from the contractor in executing on a government claim, the contractor then submits its own claim to start the running of interest, consistent with the language in the statute. I understand that, but that law is not binding on us. I understand, Your Honor. And so I'm looking at the statute, and so you're saying this is a long established practice. I guess that's your argument. It is a long established practice, long recognized by the board, and because each of those three claims, or four claims, Your Honor, 7, 9, 10, and 11, each of them meet all of the procedural, formal requirements of a Contract Disputes Act claim. Therefore, they are proper claims within the meaning of the CDA, submitted by the contractor, and therefore consistent with the interest statute to start the running of interest. Your point is that even though it says a claim, it could be any claim. It doesn't have to be the ultimate claim that you're successful on. That would, I would say, Your Honor, in the facts of this case, the fact that those first three were all submitted and demanded only the amount that the government had taken and were otherwise proper claims, that would be enough. If this court were to find that in addition to that, those claims needed to include within their scope the breach argument, Your Honor, I would say that the first three claims also included within their scope the breach argument. And what is your view of the purpose behind this provision that awards interest? And you could go beyond this provision. Obviously, there's lots of other areas of law where statutes provide for the award of interest to the successful plaintiff. I do think, Your Honor, there is, with a run of interest, there is the incentive there for the government, so in this situation, when the government takes the money, we file a claim demanding its return. That starts the running of interest. I think the hope there would be, the purpose of that would be to bring the parties to, since interest is running, to bring the parties to the table to try to resolve the dispute since interest has continued to run. And now, in this case, Your Honor, interest has been running back to 2007 for 12 years. What about making the parties whole? And that, of course, too, Your Honor. I mean, since KBR was no longer, KBR had been the stakeholder, the government, through self-help, decided to change that situation. And so, yes, KBR, this is money that otherwise should have been in KBR's pocket for the last 12 years, and the government's had the use of it. So it is to make the contractor whole. I wanted to then, following the other side, turn to the jurisdictional issue. Yes, Your Honor. On the jurisdictional issue, Your Honor, the first point I'd like to make is simply that in the facts of this case, there is no dispute that the September 2011 claim asserted the breach argument on which the Board ruled in our favor. There is no dispute on that point. The government's only issue with the September 2011 claim is their argument that it was somehow untimely. But here, Your Honor, the facts are the government knew, so back up to the beginning of the Iraq War in 2003, the government admits, acknowledges, it had an obligation under the Log Cap 3 contract to protect KBR and its subcontractors as they were performing vital life support services in support of the American warfighter in theater. The government then breached that obligation as the Board found and as the government does not challenge any longer. In response to that breach, KBR and its subcontractors over and over and over again asked for force protection from the government. When that was not available and in order to continue to perform their mission, they did go out at times and hire private security. The government knew about that. The government approved it. In particular, in the Board's 2014 decision, the Board found that an administrative contracting officer expressly approved the subcontractor using private security and charging the government for that cost, and then the government paid the cost. That was the state of play from 03, 04, 05, and 06. The government knew, approved, and paid for the use of private security over and over and over again. As Mr. Grimaldi mentioned in the hearing in 2007, it wasn't until then that the government changed its mind and began recouping costs from... When do we get to what? Yes, the Merit Pockets case. Why don't you get to that case, which the government relies heavily on, which seems to be helpful in their position. Absolutely. Just on the September 2011 claim, Your Honor, because the government did not recoup money until February of 2007, there was no claim for KBR to file until that time. This court found in another KBR case, the KBR v. Murphy case, that in order for a claim to accrue and start the statute of limitations clock running, there has to be a some certain associated with that claim. There was no some certain until the government started recouping in February 2007. September 2011 is within six years of February 2007. Therefore, that claim is timely, and if the court resolves this case on that basis, it need not reach the Merit Pockets question, which I will now turn to. On the Merit Pockets question, Your Honor, as we explained in our papers and as I've already been discussing today, in this case, from the beginning, KBR has been plain defense. That is all we have been doing. From the moment the government asserted its claim in that letter that I read earlier from the contracting officer in February 2007 to this day for 12 years, all we've been trying to do is to get back the money the government took in executing its claim against the contractor. Among other things, we asserted your breach, government, by not providing us the force protection you were required to provide materially breached the contract and therefore to the extent that our use or our subcontractors use, the private security was a breach of the restriction on the ability to do that, that breach was excused. And under this court's cases, most principally, as Your Honor was noting, Laguna and Securiforce, this court has held that the defense, every time this question of whether the defense of prior material breach must be submitted to the contracting officer, this court has said no. And that is all we are doing here. And Your Honor, just to make a couple other points, Mr. McGrimaldi was mentioning and the government also mentioned in its papers that in this case we're somehow seeking an adjustment of contract terms. Your Honor, we are not doing that. We are simply asking for the application of the common law doctrine of prior material breach just like the parties that were invoking that defense in the Laguna and Securiforce cases were doing. We're doing the exact same thing. And in fact, Your Honor, in the Laguna case, it was the government that was invoking the defense and the government that was arguing that it did not need to be submitted to the contracting officer. With respect to the question of the payment of money, Your Honor, in Securiforce, this court expressly found a defense is not a claim for money. Your Honor, again, all we're doing here is defending ourselves and asking that the government return, of course, the money that it took. But that is not, we are asserting the defense, that is not a claim for money within this court's prior cases. Just a couple of other points, Your Honor. This is also consistent, as we pointed out in our papers, with the lower tribunals that have been applying this court's Maripakos line of cases, the Jane Mobley case from the Civilian Board, the Total Engineering case from the Court of Federal Claims. Those cases also have made clear that when all the party that's invoking a given argument, all they're doing is challenging the factual underpinnings of the claim that's being asserted against them. That's not a new claim that has to go through the CDA process. Again, that's all that we are doing here is challenging the factual underpinnings of the government's assertion that we should not have used private security because they were obligated to protect us. Thank you. Thank you. Your Honors, I'll be quick. Should we start with interest again? Yeah, please. Okay, so as we discussed and as counsel discussed, the purpose is to bring the parties to the table. Get the parties to the table. That's why there's a CDA interest provision in there because there's a penalty of paying extra money the longer this takes. One of the key reasons why in 2018 we're still talking about events, 2019, sorry, still talking about events in 2003 is because although on appendix page 38 in the board's decision there's a finding that KBR knew of a breach in 2003, KBR pursued only a contract interpretation issue. Only in 2011 in response to a False Claims Act suit did KBR file a, quote, protective claim alleging breach of contract. KBR sat on its rights for eight years regarding breach of contract. That's why there's been such a significant delay in receiving interest, if you will. Turning to the discussion of returning money to KBR. This isn't a case about returning money to KBR. In 2015 this court found that the PSC costs were unallowable under the contract. These are not contract costs. They are not billable under the Log Cab 3 contract. Yet KBR billed for them. So the United States withheld to recoup them. This is not a situation where KBR is trying to get money back from underneath the contract. It is attempting to get 44 extra million dollars from the Log Cab 3 contract. Dollars that are unallowable PSC costs. That's why they are seeking an adjustment to the terms of the contract. That's why they are seeking 44 million dollars and not simply asserting a pure defense to a government claim. Thank you, Your Honors. Thank you. We thank both parties and the case is submitted.